Opinion by Judge B. FLETCHER; Partial Concurrence and Partial Dissent by Judge MENDEZ.
OPINION
B. FLETCHER, Circuit Judge:
Napoleon Arturo Bustamante appeals his convictions for illegal reentry in violation of 8 U.S.C. § 1326, making a false statement in a passport application in violation of 18 U.S.C. § 1542, and making a false statement in an application for supplemental security income benefits in violation of 42 U.S.C. § 1383a(a)(l). These convictions rested on the government’s allegation that Bustamante is not a United States citizen. To prove that allegation, the government introduced a document appearing to be a transcription of Bustamante’s birth certificate from the Philippines. We conclude that the introduction of this document violated Bustamante’s rights under the Confrontation Clause of the Sixth Amendment. Because this error was not harmless beyond a reasonable doubt, we vacate Bustamante’s convictions and remand for a new trial.
I.
Bustamante lived in the United States for many years and on many occasions held himself out as a natural-born U.S. citizen. He possessed a U.S. passport and a delayed registration of birth from California stating that he was bom in Stockton, California on February 1, 1945. While Bustamante was serving in the Air Force in the 1970s, the Air Force became *1192 concerned about Bustamante’s claim of citizenship and began an investigation in 1973. The investigation determined that the evidence of Bustamante’s citizenship was inconclusive, and he was honorably-discharged in 1976. The government then initiated immigration proceedings against Bustamante, but those proceedings were dismissed.
Bustamante continued living and working in the United States until 2006, when he was arrested for writing counterfeit checks. The investigation after his arrest found that he had been born in the Philippines and was thus not a U.S. citizen. Bustamante was convicted of uttering a counterfeit security, impersonating a U.S. citizen, and making false statements. He was sentenced to 21 months in prison and deported to the Philippines on April 8, 2008.
A few months later, Bustamante went to the U.S. Embassy in Manila and applied for a U.S. passport. He submitted a photocopy of his social security card, a photocopy of an old U.S. passport, and a Department of Veterans Affairs ID card. Bustamante received a passport and returned to the United States. After returning, Bustamante applied for social security benefits, submitting his passport and his delayed registration of birth from California as proof of citizenship. Bustamante’s application was denied, and he was arrested in July 2010 and charged with the present offenses of conviction.
II.
The government introduced several documents at trial to prove that Bustamante was born in the Philippines and is not a U.S. citizen. One of these documents, the government’s Exhibit 1, purported to be a “copy” of Bustamante’s Philippine birth certificate. This document was obtained by the government in 1975 as part of the Air Force investigation into Bustamante’s citizenship.[1] It is a one-page, typewritten document labeled: “Republic of the Philippines, City of Bacolod, Office of the Local Civil Registrar, Birth Certificate.” It is not a photocopy or duplicate. It states: “This is to certify that according to the record of births in this office, the following is the copy of the birth certificate of: Napoleon Bustamante.” It then goes on to transcribe the information contained at Page 86, Register No. 401 of the office’s birth records, most notably that Napoleon Bustamante was born on February 1,1939, in the City of Bacolod. It concludes by stating: “The foregoing is issued this 14th day of October 1975 in the City of Bacolod, Philippines, upon the request of Mr. Robert L. Coffman for whatever purpose it may serve her/him.” It is signed by “Demetrio B. Salupisa, Chief, Civil Registrar, For & In the Absence of the Local Civil Registrar.”
Shortly before trial, the government gave Bustamante documents it had just received indicating that the Philippine authorities no longer had any record of Bustamante’s birth. Both the Philippine National Statistics Office and the Bacolod City Civil Registry Office confirmed that they had no birth records for Napoleon Bustamante or any of his aliases. The City of Bacolod document explained that “our record filed in this office covering the period from 1939 to 1946 is totally mutilated,” and emails accompanying the discovery further explained that “there was poor record keeping for [birth certificates] prior to World War II.”
*1193 Based on this information, Bustamante objected to the admission, of Exhibit 1, arguing that it was not a properly authenticated foreign public document under Federal Rule of Evidence 902(3) and that its authenticity was suspect because there was no longer any record in the Philippines of Bustamante’s birth. At the district court’s direction, the government took steps to authenticate Exhibit 1, obtaining a chain of certifications establishing that Demetrio B. Salupisa was authorized to issue birth certificates and that Salupisa’s signature was similar to the record on file with the National Statistics Office. After the district court ruled that FRE 902(3) had been satisfied, Bustamante further objected to the admission of Exhibit 1, arguing that it was testimonial evidence that was inadmissible under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). The district court held that the document was not testimonial. After a four-day jury trial, Bustamante was convicted on all three counts and sentenced to thirty months imprisonment.
Bustamante timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo whether the admission of a document violated a defendant’s Confrontation Clause rights. United States v. Chung, 659 F.3d 815, 832 (9th Cir.2011).
III.
The Confrontation Clause of the Sixth Amendment guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” In Crawford v. Washington, the Supreme Court held that this “bedrock procedural guarantee” prohibits the admission of “testimonial statements of a witness who [does] not appear at trial unless [the witness is] unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination.” 541 U.S. at 42, 53-54; 124 S.Ct. 1354. Although the Court declined “to spell out a comprehensive definition of ‘testimonial,’ ” id. at 68, 124 S.Ct. 1354, it provided examples of “various formulations,” including:
[E]x parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
Id. at 51-52, 124 S.Ct. 1354 (internal quotation marks and citations omitted).
Five years later in Melendez-Diaz v. Massachusetts, the Supreme Court held that “certificates of analysis” reporting the results of forensic tests showing that certain material was cocaine were testimonial statements under Crawford, requiring the analysts who completed the certificates to be subject to confrontation. 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). The Court held that the despite being labeled “certificates,” the documents at issue were “quite plainly affidavits” that “fall within the ‘core class of testimonial statements’ ” described in Crawford. Id. at 2532; see also id. (“Our description of that category mentions affidavits twice.”).
In determining that the certificates of analysis were testimonial, the Court emphasized that they were “incontrovertibly *1194 a ‘solemn declaration or affirmation made for the purpose of establishing or proving some fact,’ ” id. (quoting Crawford, 541 U.S. at 51, 124 S.Ct. 1354); that they were “functionally identical to live, in-court testimony, doing ‘precisely what a witness does on direct examination,’ ” id. (quoting Davis v. Washington, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)); and that they were “made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,” id. (quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354).
The Court also distinguished the certificates of analysis from ordinary “[b]usiness and public records,” which “are generally admissible absent confrontation, not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial— they are not testimonial.” Id. at 2539^40. In that discussion, the Court also indicated that authentications of existing non-testimonial records do not implicate the Confrontation Clause: “A clerk could by affidavit authenticate or provide a copy of an otherwise admissible record, but could not do what the analysts did here: create a record for the sole purpose of providing evidence against a defendant.” Id. at 2539. By contrast, the Court suggested that “a clerk’s certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it” was a testimonial statement. Id.
These cases compel us to conclude that Exhibit 1 is a testimonial statement. In essence, Exhibit 1 is an affidavit testifying to the contents of the birth records of the City of Bacolod and is “functionally identical to [the] live, in-court testimony” that an employee of the Civil Registrar’s office might have provided. Id. at 2532. It was also created for the purpose of the Air Force investigation into Bustamante’s citizenship and was “made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Id. (quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354). The admission of Exhibit 1 therefore violated Bustamante’s confrontation rights because Bustamante did not have a prior opportunity to examine Salupisa. Crawford, 541 U.S. at 68-69, 124 S.Ct. 1354.
The government argues that Exhibit 1 is not testimonial because birth certificates are non-testimonial public records. Our holding today does not question the general proposition that birth certificates, and official duplicates of them, are ordinary public records “created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial.” Melendez-Diaz, 129 S.Ct. at 2539-40. But Exhibit 1 is not a copy or duplicate of a birth certificate. Like the certificates of analysis at issue in Melendez-Diaz, despite being labeled a copy of the certificate, Exhibit 1 is “quite plainly” an affidavit. See id. at 2532. It is a typewritten document in which Salupisa testifies that he has gone to the birth records of the City of Bacolod, looked up the information on Napoleon Bustamante, and summarized that information at the request of the U.S. government for the purpose of its investigation into Bustamante’s citizenship. Rather than simply authenticating an existing non-testimonial record, Salupisa created a new record for the purpose of providing evidence against Bustamante. See id. at 2539. The admission of Exhibit 1 without an opportunity for cross examination therefore violated the Sixth Amendment.
*1195 IV.
The government argues that even if Bustamante’s confrontation rights were violated, the error was harmless. The government bears the burden of proving that a Confrontation Clause error is harmless beyond a reasonable doubt. United States v. Nguyen, 565 F.3d 668, 675 (9th Cir.2009). “In evaluating whether a Confrontation Clause violation is harmless, [this court] considers a variety of factors,” including:
the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.
United States v. Orozco-Acosta, 607 F.3d 1156, 1161-62 (9th Cir.2010) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).
The government maintains that the strength of its other evidence regarding Bustamante’s citizenship renders the admission of Exhibit 1 harmless. The government points out that it also introduced marriage and school records indicating that Bustamante was born in the Philippines in 1939; the birth certificate of Bustamante’s daughter, which also indicated that her father had been born in the Philippines; and a visa application and entry document indicating that Bustamante entered the United States from the Philippines in 1970. The government also presented evidence of Bustamante’s previous conviction and deportation.
We agree that this evidence was strong, but we cannot conclude that it made the admission of Exhibit 1 harmless beyond a reasonable doubt. It is clear that Exhibit 1 was very important to the prosecution’s case. Trial was continued to allow the government time to authenticate Exhibit 1 to satisfy evidentiary requirements. It provided direct testimony on the central, critical question at trial: Where was Bustamante born? Without the admission of Exhibit 1, the communications from the City of Bacolod and the Philippine National Statistics Office indicating that they had no record of Bustamante’s birth would certainly have weakened the prosecution’s case, and strengthened the defense argument that the other records introduced by the government could have belonged to a different Napoleon Bustamante. That evidence, combined with Bustamante’s California baptismal certificate, delayed registration of birth, and U.S. passports, may have significantly altered the evidentiary picture. We cannot say beyond a reasonable doubt that the jury would have convicted Bustamante absent introduction of Exhibit 1.
Moreover, this case illustrates the importance of the Sixth Amendment’s “bedrock procedural guarantee” of confrontation. Crawford, 541 U.S. at 42, 124 S.Ct. 1354. The government introduced Salupisa’s testimonial statement, made in 1975, declaring that the City of Bacolod had Bustamante’s 1939 birth certificate. Other evidence indicated that the City of Bacolod’s birth records from 1939 to 1945 were poorly kept and in any event had been completely destroyed. This contradiction could only be resolved through cross-examination of Salupisa to determine where his information came from and when the birth records were destroyed. Without the crucible of cross-examination guaranteed by the Constitution, Bustamante had no way to test the reliability of a significant part of the government’s case.
The admission of Exhibit 1 violated Bustamante’s Sixth Amendment rights, and that error was not harmless beyond a rea *1196 sonable doubt. We VACATE Bustamante’s convictions and REMAND for a new trial. We need not address Bustamante’s remaining contentions on appeal.
VACATED and REMANDED.

. The government’s witnesses gave inconsistent testimony about whether Exhibit 1 was requested by the Air Force or by immigration authorities, but there is no dispute that it was requested as part of the government’s investigation into Bustamante's citizenship.