**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JUAN MACIAS,
*Defendant-Appellant*.

No. 13-50211

D.C. No.
3:11-cr-04340-H-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
July 10, 2014—Pasadena, California

Filed June 15, 2015

Before: Fortunato P. Benavides,* Kim McLane Wardlaw,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Benavides;
Partial Concurrence and Partial Dissent by Judge Wardlaw

---

* The Honorable Fortunato P. Benavides, Senior Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's judgment in a case in which the defendant was convicted of being a removed alien found in the United States and making a false claim of United States citizenship.

The panel held that the district court's admission of an affidavit, signed by two border patrol agents, amending the defendant's delayed registration of birth violated the Confrontation Clause because the affidavit constituted a testimonial statement and the government failed to call the agents to testify. The panel held that the admission constituted plain error, but did not affect the outcome of the trial and thus did not affect the defendant's substantial rights.

Because the panel concluded that the admission of the affidavit was harmless, the panel did not address the merits of the defendant's evidentiary challenges to its admission.

Rejecting the defendant's contention that the prosecutor drew an improper inference during closing argument by claiming that the defendant's delayed birth registration was a "forgery," the panel held that the argument that the document is a fabrication is a reasonable inference from the evidence, and that the prosecutor's remarks during closing argument do not constitute error, much less plain error.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the defendant failed to show the multiple errors necessary to prevail on a claim of cumulative error.

Judge Wardlaw concurred in part and dissented in part. She agreed with the majority's holdings that the district court violated the defendant's Confrontation Clause rights by admitting the amended delayed birth registration, which contained testimonial statements, and that admission of the document was error because the government failed to call the two attesting agents to testify. She wrote that the majority incorrectly reviews this error under the plain error standard, disregarding the well-established principle that this court reviews "de novo whether the admission of a document violated a defendant's Confrontation Clause rights." She wrote that under that standard the government cannot meet its burden of proving that the Confrontation Clause error is harmless beyond a reasonable doubt.

## COUNSEL

Kara Hartzler (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Laura Duffy, United States Attorney, Bruce Castetter, Assistance United States Attorney, Chief, Appellate Section, and Charlotte E. Kaiser (argued), Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

BENAVIDES, Circuit Judge:

This is a direct criminal appeal from convictions for being a removed alien found in the United States in violation of 8 U.S.C. § 1326 and for making a false claim of United States citizenship in violation of 18 U.S.C. § 911.  Finding no reversible error, we affirm the district court's judgment.

### I.   FACTUAL AND PROCEDURAL HISTORY

#### A.  Charged Conduct

On September 5, 2011, Defendant-Appellant Juan Macias ("Macias") was arrested for illegal re-entry near the Tecate, California, Port of Entry.  At approximately 4 o'clock in the morning, a seismic sensor indicated movement.  Border Patrol Agent Russell Slingerland and two other agents responded to the location of the sensor.  Upon investigation, they discovered Macias crouched behind boulders and brush in a steep canyon.  Macias initially told the agents that he had no legal documents to be in the United States and that he entered by "jumping the [border] fence."  Macias also told the agents he was from Mexico.  However, after Macias was brought into custody, he agreed to speak to an agent without an attorney and claimed under oath that he was born in Riverside, California.  He said his mother had told him that he had been born in Riverside, but because he was born at home she never "registered" his birth.  He claimed that he had a California birth certificate and was a United States citizen.  However, he did not have the birth certificate with him.

## B. First Trial

On September 27, 2011, a federal grand jury returned a two-count indictment, charging Macias with being a removed alien in the United States in violation of 8 U.S.C. § 1326 and with making a false claim of United States citizenship in violation of 18 U.S.C. § 911. A jury trial began on June 5, 2012, and on June 8, the district court declared a mistrial due to a hung jury. During the trial, Macias had submitted a "delayed registration of birth" document issued by the State of California, and it provided that he had been born in Riverside, California. Macias had obtained this delayed registration of birth document in 1998. After the mistrial, two of the jurors told the prosecutors that they could not find Macias guilty because there was no showing that Macias's delayed registration of birth document had been invalidated.

## C. Post-trial Investigation of Macias's Birthplace

Subsequently, at the request of the prosecutor, two border patrol agents, Andrew Kahl and Brian Desrosiers, conducted an investigation regarding Macias's place of birth. The agents interviewed Macias's family members, including his father, who told them Macias was born in Mexico, and not in California. The interviews were conducted at Macias's parents' home in Riverside, California. Through investigators with the State Department, the agents obtained a birth certificate showing that Macias was born on October 31, 1960 in Yurecuaro, State of Michoacan, Mexico. That certificate was dated November 7, 1960. Additionally, the agents reviewed documents contained in the Macias family's immigration files. Macias's parents' applications for lawful permanent residency provided that Macias had been born in Mexico.

Based on the above information discovered through their investigation, the agents concluded that Macias had been born in Mexico and then attempted to correct the birthplace listed on Macias's delayed registration of birth. The State of California has a procedure to amend a delayed registration of birth. Two individuals with knowledge of the facts may apply for an amendment if there is an error in the document. Those two individuals must fill out a notarized sworn statement and pay a fee. Agent Kahl filled out the form and both Agents Kahl and Desrosiers signed the affidavit amending Macias's delayed registration of birth. The amending affidavit provided that Macias's birth actually occurred in Yurecuaro, Michoacan, Mexico and not Riverside, California. The agents mailed the affidavit to the California Office of Vital Records, and it was attached to the delayed registration of birth on file.

### D.  Retrial

The second jury trial began on July 17, 2012, and once again, the central issue was whether Macias was born in Mexico or in California. We now turn to the evidence admitted at Macias's retrial.

### 1.  Birth Documents

Through the custodian of the California Office of Vital Records, the government introduced Macias's delayed registration of birth and the amending affidavit that had been executed by the border patrol agents. More specifically, the evidence showed that in 1998, Macias, then age 37, completed the application for a delayed registration of birth and mailed it to the California Office of Vital Records. The application contained the purported signatures of his mother,

Maria Macias ("Maria"), and a family friend, Ernestina Guerrero ("Guerrero"). The application provided that Guerrero was present at Macias's birth on October 31, 1960, at "home" in Riverside, California. To receive a delayed registration of birth, the applicant must submit proof of his place of birth. Macias submitted with his application a copy of his daughter's California birth certificate which listed her father's (Macias's) birthplace as California. The California Office of Vital Records issued the delayed registration of birth with the above information and mailed it to Macias.

As set forth previously, in 2012, the agents filed an amending affidavit, which was attached to the delayed registration of birth. Although the delayed registration of birth was admitted at the first trial, the amending affidavit was not in existence at the time of the first trial. At the time the government introduced into evidence the delayed registration of birth with the attached amending affidavit, the two agents who signed the affidavit had not testified. However, defense counsel subsequently called Agent Kahl, and he testified with respect to their investigation of Macias's birthplace and the execution of the amending affidavit.

The government also introduced a copy of the previously mentioned Mexican birth certificate dated November 7, 1960, which provided that Macias was born in Mexico on October 31, 1960. Macias's father, Felipe Macias, Sr. ("Felipe"), had signed this birth certificate, and there were two witnesses listed on it. This birth certificate had not been submitted at the first trial. Felipe testified that Macias was born in Yurecuaro, Michoacan, Mexico, and that he was present at Macias's birth. Eight days after the birth, he and Maria took Macias to the civil registry and obtained this birth certificate. He further testified that Maria, who could not read or write,

did not sign the certificate but did place her fingerprint on it. The birth certificate also contained Felipe's and Macias's fingerprints.[1] Consistent with this evidence, one of Macias's older brothers, Gil Macias, testified that Macias was born in Yurecuaro, Michoacan, Mexico.

### 2. Parents' Immigration Files

In 1987, Felipe and Maria applied for lawful permanent residency in the United States. Their applications asked whether their children were United States citizens, and they checked the box "No" for all their children, including Macias. The applications provided that all their children were born in Mexico. The parents were granted lawful permanent residency and moved the family to Riverside, California.

### 3. Macias's Immigration File

Border Patrol Agent Kara Reale testified with respect to the contents of Macias's immigration file. Macias had been deported to Mexico many times prior to this trial. Macias was first deported to Mexico in 1981, at the age of 21. During those proceedings, Macias requested to be returned to Mexico, stating that he was a citizen of Mexico.

In 1988 and 1989, Macias was again deported to Mexico based on his admissions during deportation proceedings. An audio recording of the 1988 hearing was played for the jury.

In 1992, during a deportation hearing, he initially claimed he was a citizen of Mexico and not the United States,

---

[1] The record shows that the government had the fingerprints on this birth certificate tested but the results were inconclusive.

asserting that his father had told him he was born in Mexico. However, he also stated that his mother's friend had told him he was born in Riverside. The immigration judge offered him an opportunity to present evidence, and Macias responded that he "will fix that when [he] arrive[s] in Mexico." The judge then ordered Macias to be deported to Mexico. An audio recording of this hearing was played for the jury.

In 1994, during a deportation hearing, Macias was asked if he was a citizen of the United States and he responded negatively. He responded affirmatively when asked whether he was a native and citizen of Mexico. An audio recording of this hearing was played for the jury. In July of 1998, Macias was once again deported to Mexico, after stating that he was born in Mexico.

Macias's immigration file also contained statements during deportation proceedings in 1997, 1998, and 2004, in which Macias admitted that he was born in Mexico and was a citizen of Mexico. Additionally, the government admitted warrants of removal demonstrating that Macias had been removed from the United States to Mexico in July 1998, November 2001, and September 2004. In November 2004, two months after the last removal proceedings, Macias told an immigration judge that he was a citizen of the United States. When the immigration judge asked him about his extensive deportation history, Macias responded that he had been lying about being born in Mexico. Macias told the judge that he did not discover that he was born in the United States until he was about 18 years old. The judge ordered Macias to be deported. Subsequently, in February 2011, during deportation proceedings, Macias was deported after admitting he was born in Mexico.

### 4.   Instant Offenses

As previously set forth, on September 5, 2011, Agent Slingerland apprehended Macias near the Tecate, California, Port of Entry.  Macias was hiding behind boulders and brush in a steep canyon.  Macias initially stated that he had no legal documents to be in the United States and admitted that he was from Mexico.  However, once Macias was in custody, he claimed under oath that he was born in Riverside, California, but that his mother had not "registered" his birth in California because he had been born at home.  He also claimed that he had a California birth certificate and was a citizen of the United States.  This conduct forms the basis of the instant convictions for being a removed alien found in the United States and for making a false claim of United States citizenship.  8 U.S.C. § 1326 and 18 U.S.C. § 911.

### 5.   Verdict

On July 19, 2012, the jury returned a verdict of guilty on the two counts.  On May 13, 2013, the district court sentenced Macias to a 46-month sentence as to the illegal re-entry conviction and a 36-month sentence as to the false claim conviction, with the sentences running concurrently.  Macias now appeals his convictions.

## II.  ANALYSIS

### A.  Confrontation Clause Violation

Macias contends that the district court's admission of the border patrol agents' amending affidavit, which was attached to his delayed registration of birth, violated his rights under the Sixth Amendment's Confrontation Clause.    The

Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Confrontation "Clause forbids 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Ocampo v. Vail*, 649 F.3d 1098, 1107 (9th Cir. 2011) (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). In the case at bar, the government does not claim that the witnesses were unavailable or that Macias had a prior opportunity to cross examine them. Thus, the dispute is whether the affidavit constituted a testimonial statement.

Generally, we review de novo alleged violations of the Confrontation Clause. *United States v. Bustamante*, 687 F.3d 1190, 1193 (9th Cir. 2012). Here, however, although Macias objected to the admission of the amending affidavit, he did not object on the basis of a violation of the Confrontation Clause. In his motion in limine filed just prior to the instant trial, Macias argued that the government should be precluded from introducing the border patrol agents' amending affidavit based on, among other things, hearsay, lack of personal knowledge, and impermissible vouching.[2] Because Macias

---

[2] Although Macias raised a Confrontation Clause argument with respect to documents contained in the immigration files, he did not raise this argument in his challenge to the amending affidavit. We note that the government, in response to Macias's Confrontation Clause argument as to the immigration documents, asserted that if Macias was permitted to introduce the delayed registration of birth without the testimony of the affiants (his mother and Guerrero), then the government should be allowed to introduce the immigration documents. The district court interpreted the government's argument to be that if the Confrontation Clause did not preclude the admission of the delayed registration of birth, then it should

failed to preserve the argument by making a Confrontation Clause objection, this issue should be reviewed for plain error. *United States v. Anekwu*, 695 F.3d 967, 972–73 (9th Cir. 2012) (reviewing Confrontation Clause argument for plain error). To show plain error, Macias must demonstrate: (1) error; (2) that is clear or obvious; (3) that affects the defendant's substantial rights; and (4) that "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 973 (internal quotation marks and citation omitted).**[3]**

---

not preclude the immigration documents. However, we do not believe that the district court interpreted the government's argument as actually raising a Confrontation Clause violation with respect to the amending affidavit. *Cf. United States v. Anekwu*, 695 F.3d 967, 973 (9th Cir. 2012) (explaining that a brief statement by the prosecutor that the admission of records does not violate the Confrontation Clause "does not substitute for a timely and specific Confrontation Clause objection" from the defendant). Moreover, the record makes clear that the only Confrontation Clause objection was to the mother's immigration files because the parties were initially disputing whether Macias's mother was unavailable to testify and *not* whether the border patrol agents were unavailable to testify. Macias does not challenge the admission of the documents in the immigration file on appeal.

**[3]** Our dissenting colleague suggests that we must address the Confrontation Clause claim on the merits because the government has waived any waiver argument it may have had by failing to assert it. The "waiver of waiver" doctrine is, however—like waiver generally—a discretionary doctrine. *See Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012) ("[T]he rule of waiver is a discretionary one.") (citation and internal quotation marks omitted). Which standard of review to apply is a pure issue of law, *id.*, and, exercising our discretion, we apply the plain error standard of review notwithstanding the government's failure to argue that it should apply.

### 1. Error

We must first determine whether the district court erred in admitting the amending affidavit. Under *Crawford*, we address whether the amending affidavit constitutes a testimonial statement. 541 U.S. at 53–54. In *Crawford*, the Supreme Court gave examples of what constituted testimonial statements:

> [E]x parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51–52 (internal quotation marks and citations omitted).

Relying on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), Macias contends that the amending affidavit was testimonial and therefore the government had the burden of calling the agents when it admitted the affidavit. We have recognized that *Melendez-Diaz* "stand[s] for the proposition that '[a] document created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial.'" *Anekwu*, 695 F.3d at 974 (quoting *Bullcoming*

*v. New Mexico*, 131 S. Ct. 2705, 2717 (2011)) (elipsis and brackets in original).  Here, the border patrol agents created the affidavit amending Macias's delayed registration of birth at the behest of the prosecutor after the first trial resulted in a hung jury.  After the mistrial, two of the jurors indicated that they had a problem with the delayed registration of birth document because it had not been invalidated.  Thus, it is clear that an objective witness would reasonably believe that the agents' amending affidavit was made for use at a later trial to invalidate Macias's delayed registration of birth. *Crawford*, 541 U.S. at 51–52.  And, indeed, it was used at Macias's second trial for that purpose.  Thus, the amending affidavit constituted a testimonial statement made by the agents.

Further, in *Melendez-Diaz*, the Supreme Court explained that the "Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court."  557 U.S. at 324. The Court opined that the Confrontation Clause's "value to the defendant is not replaced by a system in which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affiants if he chooses." *Id.* at 324–25.  Thus, the Supreme Court has made clear that the government has the burden of calling witnesses and allowing the defendant to confront them through cross examination. Because the amending affidavit constituted a testimonial statement and the government failed to call the agents to testify, the admission of the affidavit into evidence was error.

2. Plain Error

We next determine whether the error was plain. Macias relies on this Court's decision in *Bustamante*, 687 F.3d at 1190. In that case, the issue before this Court was also whether the criminal defendant had been born in the United States. The government introduced a typewritten document that was labeled as a "copy" of Bustamante's Philippine birth certificate. *Id*. at 1192. The document had been obtained by the government during its previous investigation into whether Bustamante was a United States citizen. *Id.* The document was neither a photocopy nor a duplicate. *Id.* It provided: "This is to certify that according to the record of births in this office, the following is the copy of the birth certificate of: Napoleon Bustamante." *Id*. The document then transcribed information from the office's birth records, stating that Bustamante was born in the City of Bacolod on February 1, 1939. *Id.* The document also provided that it was issued in 1975, and was signed by a civil registrar. *Id.*

Bustamante objected, arguing that it was inadmissible under *Crawford*. *Id.* at 1193. The district court disagreed and admitted the document. *Id.* This Court concluded that the document was a testimonial statement. *Id.* at 1194. Although labeled as a copy, it was an "affidavit testifying to the contents of the birth records . . . and is functionally identical to [the] live, in-court testimony that an employee of the Civil Registrar's office might have provided." *Id*. (citation and internal quotation marks omitted). Moreover, the document was created for the investigation into Bustamante's citizenship and "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. This Court made clear that its holding did not impugn the "general

proposition that birth certificates, and official duplicates of them, are ordinary public records 'created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial.'" *Id.* (quoting *Melendez-Diaz*, 557 U.S. at 324). In contrast, the document at issue did not merely authenticate an "existing non-testimonial record;" instead, a new record was created for the purpose of generating evidence against Bustamante. *Id.* Accordingly, the admission of the document without allowing an opportunity for cross examination violated the Sixth Amendment's Confrontation Clause. *Id.*

Likewise, in the instant case, the amending affidavit essentially testified regarding the results of the border patrol agents' investigation regarding the place of Macias's birth. The amending affidavit was created during an investigation of Macias's citizenship and with the intent to use it at Macias's second trial. The amending affidavit was created "for the purpose of providing evidence against" Macias. *Id.* Following this Court's opinion in *Bustamante*, we are convinced that the admission of the amending affidavit was clear or obvious error. Thus, the admission constitutes plain error.[4]

### 3. Substantial Rights

The next question is whether the admission of the amending affidavit affected Macias's substantial rights. Ordinarily, an error has affected an appellant's substantial

---

[4] We recognize that the instant trial took place prior to the issuance of the *Bustamante* opinion. Nonetheless, the Supreme Court has held that an error is plain if it is contrary to the law at the time of appeal. *Henderson v. United States*, __ U.S. __, 133 S. Ct. 1121, 1130–31 (2013).

rights when the error "affected the outcome of the district court proceedings." *United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014). Ultimately, we conclude that the admission of the affidavit did not affect the outcome of the proceedings in light of (1) Agent Kahl's testimony at trial explaining the agents' investigation that culminated in their execution of the amending affidavit and (2) the overwhelming evidence that Macias was born in Mexico.

As previously explained, because the amending affidavit was testimonial, Macias had the right to confront the affiants, Border Patrol Agents Kahl and Desrosiers. The district court admitted the affidavit attached to the delayed registration of birth during the government's case-in-chief prior to Macias having the opportunity to confront either witness. However, during the presentation of his defense, Macias called Agent Kahl and questioned him regarding his role in executing the amending affidavit. Thus, Macias was able to belatedly confront Agent Kahl. Indeed, when the prosecutor objected to Macias's questioning as leading, defense counsel responded that he was "calling an opponent party witness. It's an adverse witness. I'm permitted to cross." The district court overruled the objection as to leading and allowed Macias to ask the leading question. Thus, Macias was allowed to cross examine Agent Kahl in front of the jury.

Although Macias was able to confront Agent Kahl, Agent Desrosiers did not testify. However, there is no indication that Agent Desrosiers's testimony would be anything but cumulative of Agent Kahl's testimony. Agent Kahl testified that the prosecutor requested assistance in investigating Macias's citizenship and nationality. Agents Kahl and Desrosiers together went to the home of Macias's parents and interviewed the family. Both agents reviewed documents

from the family's immigrations files. Additionally, Agent Kahl testified that the State Department investigators located Macias's Mexican birth certificate. Based on the agents' interviews with Macias's family, their review of the documents in the family's immigration files and Macias's Mexican birth certificate, the agents concluded that Macias was born in Mexico. Agent Kahl then executed the affidavit amending Macias's delayed registration of birth. The amending affidavit provides that Macias was born in Mexico and not in Riverside, California. The affidavit further states as follows: "Mexican birth certificate has been obtained by U.S. Government. Father Felipe Guzman Macias confirms son born in Mexico. Father['s] and Mother's alien registration files show Johnny Chaboya Macias [was] born in Mexico." As such, the amending affidavit itself provides the source of the information that the agents relied upon in coming to their conclusion that Macias was born in Mexico.[5] Significantly, Macias's father testified at trial that Macias was born in Mexico, and the documentary evidence cited by the agents in the affidavit was before the jury. As such, the jury had before it admissible evidence explaining the agents' stated reasons for executing the amending affidavit.

In determining whether the failure to confront Agent Desrosier and the belated confrontation of Agent Kahl affected the outcome of Macias's trial, it is important to keep in mind what was actually contested at trial. Although Macias objected to the admission of the Mexican birth

---

[5] Both agents signed the affidavit stating that they certified under penalty of perjury that they had personal knowledge of the facts in the affidavit. Agent Kahl testified that although he was not present at Macias's birth, he conducted an investigation and believed that he did "have personal knowledge as to [Macias's] place of birth."

certificate as "not certified," Macias did not dispute that his father had obtained the birth certificate. Indeed, Macias called an immigration lawyer to testify that it was common for Mexican parents to register their children in Mexico even if the child had been born in the United States. The immigration lawyer explained that parents would register the child in Mexico so that the child could obtain an education and other benefits that are given to Mexican citizens. During closing argument, defense counsel stated that it is "very common" for a child to be "born in the United States but to be registered in Mexico, because a baby unregistered in Mexico can't be vaccinated, can't go to school, can't get healthcare and can't enjoy the legal and social benefits without that registration." Accordingly, Macias did not actually dispute the fact that Macias's father obtained the Mexican birth certificate.

Additionally, in his brief, Macias admits that his parents listed his birthplace as Mexico on their applications for lawful permanent residency. Macias also admits that he has been "deported on numerous occasions beginning in 1981" and that he claimed to be a citizen of Mexico during some of those deportation proceedings.

Attempting to show harm, Macias argues that the principal difference between the first trial and the second trial is the introduction of the amending affidavit. Macias is correct that the amending affidavit was only admitted at the retrial. Likewise, the Mexican birth certificate was only admitted at the retrial, and Macias fails to recognize the importance of that document. The importance of the Mexican birth certificate is magnified when, at trial, the defense essentially admitted that his father registered him when he was barely a week old in Yurecuaro, which is over 1,500

miles from Riverside, California.[6]  The importance of the Mexican birth certificate is further magnified by the testimony of the custodian of the delayed registration of birth. The custodian testified that if her office had been provided with either Macias's Mexican birth certificate or his deportation orders, it would not have issued him a delayed registration of birth.  Macias does not dispute the validity of the Mexican birth certificate or the deportation orders.  Thus, the custodian's  testimony that these documents would have precluded the issuance of Macias's delayed registration of birth essentially eviscerates his defense.

To summarize, the following evidence admitted at trial convinces us that the Confrontation Clause violation did not affect the outcome of the trial and thus did not affect Macias's substantial rights.  Macias's father testified that he was present at Macias's birth in Mexico.  His father also confirmed the authenticity of the Mexican birth certificate, which was obtained when Macias was one week old.  Macias admitted that he was a citizen of Mexico in deportation proceedings that occurred both before and after he obtained the delayed registration of birth.  With respect to Macias's delayed registration of birth document, neither affiant testified.    Moreover, Macias's mother's application for residency provided that Macias was born in Mexico, which conflicts with the birthplace listed in the delayed registration of birth document.  With respect to the amending affidavit, as set forth above, Macias was able to cross examine one of the agents as to the agents' joint investigation and the evidence

---

[6] We may take judicial notice of the distance between the two locations. *See Cervantes v. United States*, 263 F.2d 800, 804 n.5 (9th Cir. 1959) (noting that "we take judicial notice of the fact that San Clemente is more than seventy miles from the nearest port of entry from Mexico").

they relied upon to execute the amending affidavit. Under those circumstances, we are convinced that the error did not affect the outcome of the trial. Macias has not shown that his substantial rights were affected.[7]

### B. Evidentiary Challenges to Amending Affidavit

Macias raises four more arguments challenging the admission of the *same* amending affidavit discussed above. More specifically, Macias contends that the amending affidavit should have been excluded because: (1) it constituted inadmissible hearsay; (2) its probative value was substantially outweighed by a danger of unfair prejudice; (3) its affiants lacked personal knowledge; and (4) it was an improper attempt to have one witness testify as to another witness's credibility. Unlike Macias's Confrontation Clause argument, these four evidentiary objections are preserved for appeal.

Where there has been a nonconstitutional error, we must reverse "unless there is a 'fair assurance' of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc) (quoting *United States v. Crosby*, 75 F.3d 1343, 1349 (9th Cir. 1996)). In the preceding discussion at II.A.3, *supra*, we concluded that the admission of the affidavit did not affect the outcome of the proceedings. We recognize that the preceding discussion involved a different assignment of the

---

[7] Because the error did not affect Macias's substantial rights, we need not reach the fourth prong of the plain error test, which is whether the "error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Anekwu*, 695 F.3d at 973.

burden of proof with respect to whether the verdict was affected. In the preceding discussion, under the plain error standard, Macias had the burden of showing that the verdict was affected. For these four preserved evidentiary challenges, the government has the burden of showing that the verdict was not affected by the affidavit. We conclude that based on the same evidence and reasons set forth in our discussion in II.A.3, *supra*, the government has shouldered its burden of demonstrating that it is more probable than not that the error did not materially affect the verdict. Because we conclude that the admission of this affidavit is harmless error, we need not address the merits of these evidentiary objections. *See United States v. Bishop*, 1 F.3d 910, 911 (9th Cir. 1993) (explaining that the Court need not reach the merits of the claim that the evidence was inadmissible because any error was harmless).

## C. Prosecutorial Misconduct

Macias contends that the prosecutor drew an improper inference in closing argument by claiming that Macias's delayed birth registration was a "forgery." Macias recognizes that because defense counsel failed to object to the argument, the claim is reviewed for plain error. To show plain error, Macias must demonstrate that: (1) there was error; (2) the error was plain; and (3) the error affected substantial rights. *United States v. Geston*, 299 F.3d 1130, 1134–35 (9th Cir. 2002); *Olano*, 507 U.S. at 730–32. "Under this standard, a conviction can be reversed only if, viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings, or where failing to reverse a conviction would result in a miscarriage of justice." *Geston*, 299 F.3d at 1135 (internal quotation marks and citation omitted).

Referring to the delayed birth registration during closing argument, the prosecutor called the document a "complete fabrication." He further asserted that "[i]t wasn't the mom who signed it. This is a forgery in and of itself." He further argued that Macias's mother would have signed it "Maria Chaboya" as opposed to "Maria Macias." He then stated that "[w]hat probably happened here—and I wasn't there. None of us were there. What probably happened is the Defendant decided he's going to fill this form out and he puts a signature down there."

In response to the prosecutor's forgery accusation, defense counsel explained during closing argument that Macias's mother's full name was "Maria Chaboya de Macias" and invited the jury to compare Maria's signature on the delayed registration of birth with her signature on the application for lawful permanent residency. Defense counsel argued that the name "'Maria' looks exactly the same in both of the applications."

"Prosecutors have considerable leeway to strike hard blows based on the evidence and all reasonable inferences from the evidence." *United States v. Sullivan*, 522 F.3d 967, 982 (9th Cir. 2008) (citation and internal quotation marks omitted); *cf. United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993) (explaining that prosecutors may argue in closing argument that one side is lying if the argument is based on reasonable inferences).

The principal issue in this case is whether Macias was born in the United States. The theory of the government's case was that the delayed registration of birth was obtained by fraud. During closing argument, the prosecutor relied heavily on the Mexican birth certificate, arguing that the certificate

"in and of itself is conclusive" as to Macias's place of birth. The prosecutor also emphasized that the only trial witness who was present at Macias's birth was Felipe, who testified that it took place in Mexico. Additionally, Macias's older brother Gil testified that Macias was born in Mexico. The prosecutor then pointed out that during a previous deportation proceeding Macias had claimed that a family friend told him he was born in Riverside, California. However, during the instant deportation proceedings, Macias changed his story by claiming that it was his mother who told him that he was born in Riverside. Further, although Macias claimed to have learned of his true birthplace when he was 18 years old, he did not obtain the delayed birth registration until approximately 20 years later—after several deportations. Additionally, Macias made numerous sworn statements during immigration proceedings that he was born in Mexico and was a Mexican national.

The prosecutor attacked the validity of the delayed registration of birth by stating that Maria could neither read nor write.[8] He also pointed out that the State of California does not verify signatures on the delayed registrations of birth.

The evidence before the jury made it abundantly clear that the issue was whether Macias was born in the United States and that the prosecutor's position was that the Mexican birth certificate was genuine. The evidence demonstrated that it was Macias who obtained the delayed birth registration.

---

[8] Felipe had testified that Maria could neither read nor write. Likewise, during his post-arrest interview, Macias stated under oath that his mother "didn't know how to read or write."

Thus, the inference that can be drawn from the evidence is that Macias falsely procured the delayed birth registration.

Although there is no direct evidence that it was actually Macias who signed his mother's name on the delayed registration of birth, there is strong evidence demonstrating that Macias was born in Mexico, including the Mexican birth certificate, the immigration files, and Macias's father's and brother's testimonies. We conclude that the argument that the document is a fabrication is a reasonable inference from the evidence. *Sullivan*, 522 F.3d at 982. Accordingly, the prosecutor's remarks during his closing argument do not constitute error, much less plain error.

### D.  Cumulative Error

Finally, Macias contends that the combined effect of the above-discussed alleged errors rendered his trial fundamentally unfair. "In some cases, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). If the "government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." *Id*.

As set forth previously, we hold that the admission of the amending affidavit did violate the Confrontation Clause, but that it did not constitute plain error that affected Macias's substantial rights. With respect to the nonconstitutional challenges to the amending affidavit, we explained above that any error is harmless. Although Macias challenges the admission of the amending affidavit on numerous grounds, it is an admission of a *single* document. Further, the

prosecutor's remarks did not constitute an error. Macias has failed to show the multiple errors necessary to prevail on a claim of cumulative error.

III.    CONCLUSION

For the above reasons, the district court's judgment is **AFFIRMED**.

---

WARDLAW, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court violated Macias's Confrontation Clause rights by admitting the Amended Delayed Birth Registration, which contained the Border Patrol agents' testimonial statements that Macias was born in Mexico. The majority also correctly holds that the district court's admission of the document where the government failed to call the two attesting Border Patrol agents to testify at Macias's trial was error. However, the majority incorrectly reviews this error under the plain error standard, concluding that although the error was "plain," it did not affect Macias's substantial rights. The majority disregards the well-established principle that we "review de novo whether the admission of a document violated a defendant's Confrontation Clause rights." *United States v. Bustamante*, 687 F.3d 1190, 1193 (9th Cir. 2012). Under that standard, "[t]he government bears the burden of proving that a Confrontation Clause error is harmless beyond a reasonable doubt." *Id.* at 1195. The government cannot meet that burden here.

## A.

Macias's opening brief argues that the standard of review of the Confrontation Clause error is "de novo" review. The government's answering brief agrees: It states that "[t]his court reviews '[t]he district court's resolution of Confrontation Clause claims' de novo," citing *United States v. Berry*, 683 F.3d 1015, 1020 (9th Cir. 2012) ("The district court's resolution of Confrontation Clause claims is reviewed *de novo*."). The government further agrees that it bears the burden of proving that the error was harmless beyond a reasonable doubt, citing *United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 675 (9th Cir. 2009) ("The prosecution bears the burden of proving the error was harmless beyond a reasonable doubt."). The answering brief then addresses the merits of Macias's Confrontation Clause claim for the next five pages.

This is classic "waiver of waiver." Where the government elects to address an unpreserved claim on the merits rather than to argue that the defendant waived the claim by failing to object on that basis in the trial court, it is deemed to waive the waiver. In *United States v. Doe*, 53 F.3d 1081 (9th Cir. 1995), for example, the government, as here, failed to argue waiver in its briefs or at oral argument, but instead urged us to reach the merits of the claim. We concluded that the "government ha[d] 'waived' any waiver argument it may have had." *Id.* at 1083. Citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 815–16 (1985), we reasoned that "[w]aiver does not divest the Court of jurisdiction it otherwise enjoys." Rather, "[w]aiver is a creature of judicial policy, informed in this purely federal context by concerns of fairness, finality, and economy." *Id.* at 1082. Similarly, in *Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2009), the

plaintiff did not argue waiver, in the sense of failing to preserve an objection, but addressed the question of qualified immunity on the merits. We held that "[i]t is well-established that a party can waive waiver implicitly by failing to assert it," and that the plaintiff "waived the defendants' waiver by addressing the claim on the merits without also making a waiver argument." *Id.* at 1068 (internal quotation marks omitted); *see also Graham-Sult v. Clainos*, 756 F.3d 724, 747 n.16 (9th Cir. 2013) ("[Defendants] did not raise [a defense] in their motions or replies in the district court. However, Plaintiffs have not argued that [Defendants] waived this argument, and have therefore waived the opportunity to object on that ground."); *United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th Cir. 2002) ("[T]he government can 'waive waiver' implicitly by failing to assert it[.]"); *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994) ("This court will not address waiver if not raised by the opposing party."); *United States v. Lewis*, 787 F.2d 1318, 1323 n.6 (9th Cir.) *amended by* 798 F.2d 1250 (9th Cir. 1986) (refusing to address the government's waiver argument, raised for the first time in its petition for rehearing, because the government had failed to argue waiver in its briefs or at oral argument).

Given that the government elected to argue the Confrontation Clause issue on the merits, and the novel and fairly egregious circumstances by which the inadmissible evidence was created, we not only can, but should, address the Confrontation Clause claim on its merits.[1]    The

---

[1] The majority articulates no reason for exercising its discretion to ignore the government's waiver of the plain error standard of review and its express reliance on the de novo review standard. Indeed, there is no reason why our court should not exercise its discretion to address the merits of Macias's Confrontation Clause objection here, and every reason

Confrontation Clause is a "bedrock procedural guarantee," *Crawford v. Washington*, 541 U.S. 36, 42 (2004), which courts should make every effort to preserve.[2]

The government admits it created the Amended Delayed Birth Registration to bolster its case against Macias. At Macias's first trial on these charges, the court admitted Macias's Delayed Birth Registration. A Border Patrol agent, Joel Mata, Jr., testified that he had attempted to "cancel" Macias's Delayed Birth Registration by stamping the word

---

why it should. We have found three exceptions to the waiver rule even where the "waiver" has not been waived: "(1) [] the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new issue arises while appeal is pending because of a change in the law, and (3) when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) (internal quotation marks omitted). Deciding the Confrontation Clause issue here is necessary "to preserve the integrity of the judicial process." Whether the admission of the Amended Delayed Birth Registration violated the Confrontation Clause is a purely legal question. And, because the issue was addressed by both parties on the merits, neither is prejudiced by our addressing it. *See Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1517 (9th Cir. 1988) (addressing a waived issue on the merits, stating "[t]he issue has been thoroughly briefed and argued here, and [appellant] has not objected to our consideration of it," and concluding that, "[b]ecause the issue is one of law and there is no deficiency in the record relating to it, we exercise our discretion to entertain the question").

[2] Addressing the hearsay rule embedded in the Confrontation Clause, Chief Justice Marshall wrote, "I know of no principle in the preservation of which all are more concerned. I know none, by undermining which, life, liberty and property, might be more endangered. It is therefore incumbent on courts to be watchful of every inroad on a principle so truly important." *United States v. Burr*, 25 F.Cas. 187, 193 (No. 14,694) (CC Va. 1807) (Marshall, C. J.). So too here.

"Canceled" on a copy of it and submitting it to the California Department of Vital Records (the "Vital Records Department").[3] The government then called a representative from the Vital Records Department, which had rejected the purported "cancellation," who explained that the Delayed Birth Registration could be changed only by amendment. The first jury hung and the court declared a mistrial. The prosecution then spoke to several jurors who revealed that the two jurors responsible for hanging the jury believed that the government should have followed the procedures outlined by the Vital Records Department's representative; that is, that the government should have sought an amendment to Macias's Delayed Birth Registration.

Before the second trial, at the prosecutor's direction, two *other* Border Patrol agents, whom the government did *not* call to testify at the second trial, Brian Desrosiers and Andrew Kahl, generated the Amended Delayed Birth Registration by submitting an affidavit attesting that Macias was born in Mexico, not Riverside.[4] The affidavit listed evidence the

---

[3] Mata also testified at the first trial that Macias admitted to him that he was a citizen of Mexico, and that he previously had personally removed Macias to Mexico. Evidently, Mata's testimony was insufficient to establish Macias's Mexican citizenship.

[4] The agents certified "under penalty of perjury" in the Amended Delayed Birth Registration that they had "personal knowledge" of the facts and information they used to amend the birth certificate, including the location of Macias's birth. The agents did not have personal knowledge that Macias was born in Yurecuaro, Mexico, so they not only ginned up the evidence; they fudged in doing so. *See United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014) ("Personal knowledge means knowledge produced by the direct involvement of the senses."). The Assistant U.S. Attorney frankly acknowledged that the agents submitted the affidavit at her direction; we must presume she understands the legal

prosecution planned to (and did) introduce at the second trial as the "reason for correction" or "amendment" of the Delayed Birth Registration. Thus, the government fabricated the very evidence—the Amended Delayed Birth Registration—it thought it would need to secure Macias's conviction the second time around.

## B.

The government argues that it was not a violation of Macias's Confrontation Clause rights to admit the Amended Delayed Birth Registration on several bases, none of which is availing.[5] First, the government argues that there was no Confrontation Clause violation because the Amended Delayed Birth Registration, once filed, became part of Macias's Delayed Birth Registration. Citing *Crawford*, the government agrees that *testimonial* evidence may not be presented at trial unless the defendant has the opportunity to cross-examine the witness. *See* 541 U.S. at 59 ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."). The government, however, argues that the Amended Delayed Birth Registration is non-testimonial. Relying on our decision in *United States v. Bahena-Cardenas*, 411 F.3d 1067 (9th Cir. 2005), for the proposition that birth certificates are

---

meaning of "personal knowledge," and that she was aware that the agents lacked personal knowledge of the circumstances of Macias's birth.

[5] There were a host of other problems with the Amended Delayed Birth Registration raised by Macias in his motion in limine. Macias argued that the Amended Delayed Birth Registration was hearsay, that the agents lacked personal knowledge of the facts to which they attested, and that the statements constituted impermissible prosecutorial vouching.

non-testimonial, *see id.* at 1075 (holding that a "warrant of deportation is no different than a birth certificate or any other public record which constitutes the routine cataloguing of an unambiguous factual matter"), the government asserts that the Amended Delayed Birth Registration is part of Macias's birth record and that it is, for that reason, non-testimonial.

The government's position is formalistic: it hinges on the label "birth certificate," without analyzing whether the relevant statements were made under circumstances in which an objective witness would be reasonably led to believe that they would be used in future litigation. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309–10 (2009) (one formulation of "the class of testimonial statements covered by the Confrontation Clause" is "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" (quoting *Crawford*, 541 U.S. at 52)). The Amended Delayed Birth Registration was clearly not the routine, objective, cataloguing of a particular factual matter contemplated in *Bahena-Cardenas*, but was, instead a document prepared at the prosecutor's behest "in anticipation of litigation." 411 F.3d at 1075. Though birth certificates routinely catalogue unambiguous factual matters in general, the Amended Delayed Birth Registration did not. Instead, it captured two Border Patrol agents' conclusions on a particular factual matter—the location of Macias's birth— after their review of certain evidence. Thus, even if the Amended Delayed Birth Registration is properly considered part of Macias's birth certificate, it remains testimonial in nature.

Second, the government asserts that there was no Confrontation Clause violation because California

Department of Public Health section chief Karen Roth testified during Macias's second trial. Roth was called to—and did—testify that the Amended Delayed Birth Registration is part of Macias's official birth record. The government argues that because Roth so testified at trial, Macias's argument that a Confrontation Clause violation occurred is "illusory." That Roth testified is entirely irrelevant, however: the testimonial statements in the Amended Delayed Birth Registration were made by Agents Kahl and Desrosiers, not Roth. Roth's general testimony regarding the effect of the agents' amendment on Macias's birth record does nothing to remedy the government's failure to call the actual affiants—Agents Kahl and Desrosiers—to the stand during the second trial.

Third, the government argues that if the Amended Delayed Birth Registration is testimonial then, "under Macias' very own reasoning," so is the Delayed Birth Registration. The government contends that, like the Amended Delayed Birth Registration, the Delayed Birth Registration contains Macias's "self-serving" statement as to his birthplace, along with the signatures of two other individuals who attested to their presence at Macias's birth. The government argues that, under *Crawford*, an objective witness would reasonably be led to believe the Delayed Birth Registration might be used in future litigation. This argument is a non-sequitur, however. Only Macias, and not the government, has a constitutional right to confront the witnesses against him. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the *accused* shall enjoy the right . . . to be confronted with the witnesses against him.") (emphasis added); *Crawford*, 541 U.S. at 59 ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the *defendant* has

had a prior opportunity to cross-examine.") (emphasis added). Thus, even if Macias's Delayed Birth Registration is testimonial, its admission does not violate the Confrontation Clause.

## C.

The government cannot show that the admission of the Amended Delayed Birth Certificate was "harmless beyond a reasonable doubt." *Tuyet Thi-Bach Nguyen*, 565 F.3d at 675. The jury hung at the first trial, and the material difference between the two trials was the admission of the Amended Delayed Birth Registration. Thus, its admission cannot be harmless beyond a reasonable doubt. *See United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002) ("[Defendant's] first trial, which did not include the improper questioning, resulted in a mistrial, with the jury unable to reach a verdict. This circumstance leads us to conclude that the improper questioning impacted [Defendant's] due process rights."); *United States v. Thompson*, 37 F.3d 450, 454 (9th Cir. 1994) (emphasizing that the hung jury after the first trial was "persuasive evidence that the district court's error [in the second trial] affected the verdict," and declining to find harmless error); *United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) ("Moreover, particularly in view of the prior hung jury, we conclude that the error [at the defendant's second trial] was not harmless beyond a reasonable doubt."). Indeed, a comparison of the two trials reveals that substantially similar evidence was presented at each: at both trials, Macias's father, Felipe, testified that Macias was born in Mexico; at both trials, Macias's Delayed Birth Registration was presented, along with his parents' applications for lawful permanent residency, in which Macias was listed as having been born in Mexico; and, at both trials, Macias's deportation

history was presented, with particular emphasis on the number of times that, during those proceedings, he claimed to have been born in Mexico. The material difference between the first and second trials was the admission of the Amended Delayed Birth Registration—a literally new piece of evidence *created* to secure Macias's conviction.

The government argues that there was a litany of differences between the two trials. These included, according to the government, the decision to call certain new witnesses, including Macias's brother Gil Macias, and not call others, specifically Mata. But the decision not to call Mata, whose testimony was obviously not credited by the jury at Macias's first trial, is not one which shows the harmlessness of the admission of the Amended Delayed Birth Registration. And Gil Macias's testimony was of little help to the government, as he testified that he was unable to remember Macias's birth. The government also points to the alteration of its exhibit list, including the decision to present recordings from Macias's removal hearings before the Immigration Judge, and to the fact that the jury received a new instruction at the conclusion of the second trial. But the government never explains why any of these differences prove the improper admission of the Amended Delayed Birth Registration harmless beyond a reasonable doubt.

Nor is there any basis to conclude beyond a reasonable doubt that the admission of Macias's Mexican birth certificate, rather than the erroneous admission of the Amended Delayed Birth Registration, was responsible for the change in outcome from Macias's first trial to the second. In fact, expert testimony proffered at Macias's second trial demonstrated that the existence of a Mexican birth certificate is not determinative of an individual's birthplace: Alejandro

Osuna, a professor of law in Mexico, testified that it was common practice at the time of Macias's birth for Mexican parents of children born in the United States to register their children's birth in Mexico as well. Osuna testified that obtaining a Mexican birth certificate was critical to the child's access to education, health, and even property ownership in Mexico. Osuna's testimony thus demonstrated the relative insignificance of Macias's Mexican birth certificate to the determination of his citizenship.

Consideration of other factors under the harmless error analysis similarly points to the conclusion that the Confrontation Clause error was not harmless beyond a reasonable doubt. *See Tuyet Thi-Bach Nguyen*, 565 F.3d at 675 ("'Whether an error is harmless depends on a variety of factors, including whether the testimony was cumulative, the presence or absence of [evidence] corroborating or contradicting the testimony on material points, the extent of cross-examination, and of course, the overall strength of the prosecution's case.'" (quoting *United States v. Mayfield*, 189 F.3d 895, 906 (9th Cir. 1999))). The Amended Delayed Birth Registration was not cumulative, as no other evidence was offered to amend Macias's Delayed Birth Registration, or to alter its significance. And while certain corroborating evidence, cited by the agents in the Amended Delayed Birth Registration as the basis for the amendment, was presented at the second trial,[6] such evidence did not purport to *amend* the birth certificate. Furthermore, no cross-examination of Agent

---

[6] This evidence, as the majority points out, included the government's acquisition of Macias's Mexican birth certificate, Macias's father's statement that Macias was born in Mexico, and Macias's parents' applications for lawful permanent residency stating that Macias was born in Mexico.

Kahl or Agent Desroiers occurred.  That Macias called Agent Kahl to the stand and was permitted, on *direct* examination, to ask him certain leading questions does not render Macias's inability to cross-examine both agents harmless.

Furthermore, the Amended Delayed Birth Registration was critical to the prosecution's case.  *See id.*; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (stating that "the importance of the witness' testimony in the prosecution's case" is one factor to be considered in determining whether a Confrontation Clause error is harmless).  The government relied heavily on the Amended Delayed Birth Registration in its case-in-chief, asking Roth a series of questions about its significance to the Delayed Birth Registration.  The government stressed that the Delayed Birth Registration was now a "two-page document" that had been amended pursuant to procedures developed by the state of California, and which reflected that Macias was "born at a home in Michoacan, Mexico."  In its closing argument, the government repeated its refrain, urging that "[w]e need to be clear that the document on record with the State of California as we sit here today has two pages."   Then, almost defensively, the government argued that Agents Kahl and Desrosiers did "exactly what the representative from the State of California suggested happen," when they amended Macias's Delayed Birth Registration.

The Amended Delayed Birth Registration purported to show that Macias's Delayed Birth Registration—the strongest piece of evidence in his favor—had been amended to reflect that his actual birthplace was Mexico, not California.  To highlight, as the majority does, the mere strength of the evidence supporting the government's case at the second trial misses the mark, because there was equally strong evidence,

presented by the government at the first trial, that Macias was
born in Mexico. And we know that the evidence in the first
trial was countered by evidence of sufficient strength to
create a reasonable doubt in the minds of two jurors. The
admission of the Amended Delayed Birth Registration at the
second trial in violation of the Confrontation Clause negated
the strength of the defense evidence, resulting in a conviction.
The government cannot demonstrate that the *Crawford* error
was harmless beyond a reasonable doubt. Thus, the judgment
of conviction should be reversed, not affirmed.