**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  15-50158 |
| Plaintiff-Appellee, | D.C. No. 2:10-cr-00923-SJO-31 |
| v. | |
| RONDALE YOUNG, AKA Devil, AKA P-Grump, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted July 10, 2017
Pasadena, California

Before:  PREGERSON,** REINHARDT, and WARDLAW, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* Prior to his death, Judge Pregerson fully participated in this case and formally concurred in this disposition after deliberations were complete.

On August 2, 2009, alleged Pueblo Bishops Bloods gang member Jesse McWayne was killed during a drive-by shooting in the Pueblo Del Rio Housing Projects in South Los Angeles. When a responding officer arrived at the scene, he heard someone in the crowd say, "It was 38." Just forty minutes later, at a carwash in nearby 38th Street gang territory, two men exited a black Chrysler and shot and killed Francisco Cornelio. Detectives suspected that Rondale Young was involved in the shooting because video surveillance and eyewitness identifications indicated that the vehicle used in the carwash shooting belonged to Helen Young, Rondale's mother, and he was charged and convicted.

Rondale Young now appeals his jury trial convictions for conspiracy to violate the Racketeer Influenced and Corrupt Practices Act (RICO), conspiratorial and substantive murder under the Violent Crimes in Aid of Racketeering (VICAR) statute, and use of a firearm in furtherance of a crime of violence. Because several inculpatory statements were admitted into evidence in violation of *Miranda* and the Confrontation Clause, and the district court erroneously instructed the jury on the elements of RICO, we vacate the convictions and remand.

1. Young argues that the district court erred in admitting hearsay statements made by alleged Pueblo Bishops gang member Shane Tresevant, in violation of the Confrontation Clause. During trial, Detective Calzadillas testified

that Tresevant told a detective that he saw Young and Anthony Gabourel get into Young's mother's vehicle shortly after Jesse McWayne was shot. Detective Calzadillas also testified that Tresevant told a detective that Gabourel returned to the Pueblo Del Rio Housing Projects about an hour later and said they "got one." When the prosecutor asked Detective Calzadillas what he understood "got one" to mean based on his training and experience with gangs, Detective Calzadillas replied, "That they had shot somebody in retaliation."

Neither Gabourel nor Tresevant testified at trial. The statements were admitted over defense counsel's hearsay and Confrontation Clause objections. The government concedes that the district court erred in admitting the statements, but argues that the error was harmless. We disagree.

The government bears the burden of showing that a Confrontation Clause error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). In evaluating this issue, we consider "the importance of the witness'[s] testimony to the prosecution's case, whether the testimony was cumulative, . . . and, of course, the overall strength of the prosecution's case[.]" *See United States v. Esparza*, 791 F.3d 1067, 1074 (9th Cir. 2015) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). "Even when the government's case is 'strong,' a Confrontation Clause violation is not harmless

3

where the erroneously admitted evidence could have 'significantly altered the evidentiary picture.'" *Id.* (quoting *United States v. Bustamante,* 687 F.3d 1190, 1195 (9th Cir. 2012)).

Here, there was limited evidence of Young's involvement in the shooting. Besides the Tresevant hearsay statements, the other evidence that allegedly placed Young at the scene of the crime included (1) Young's mother's statement to police that her son had her car on the morning of the murder; (2) Young's inculpatory statements to police, which, as discussed below, were obtained in violation of *Miranda*; and (3) video surveillance that showed Young's mother's car (though not Young) at the crime scene. Eyewitnesses at the crime scene did not visually identify Young, and Gabourel admitted that he and three others (including Tresevant) were in the car on the day of the murder, but he did not implicate Young.

The evidence of Young's gang involvement was also minimal. The motive for the shooting, an essential element under VICAR, was predominantly established by Detective Calzadillas's testimony that the "got one" remark indicated a retaliatory, gang-related motive. The only other evidence directly linking Young to gang-affiliated conduct were his boasts to a jail informant, which

at best ambiguously tie Young to the gang and could instead indicate that Young had disavowed "putting in work" for the gang by the time of the offense.

Eliminating Tresevant's hearsay statements undermines the likelihood that the jury would have found that Young was present in the car when the murder occurred or that Young had a gang-related motive for participating. However, we need not decide whether the Confrontation Clause violation was harmless on its own because we conclude that the Confrontation Clause and *Miranda* violations were collectively prejudicial.

2. Young argues that detectives engaged in a deliberate two-step interrogation process when they questioned him on September 22, 2009, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Missouri v. Seibert*, 542 U.S. 600 (2004).

A "deliberate two-step interrogation" occurs when an officer deliberately waits until the suspect has confessed, then gives *Miranda* warnings and has the suspect repeat his confession. *Id.* at 1158–60. Under *Seibert*, if officers deliberately employ the two-step technique, any post-warning statement must be suppressed unless sufficient curative measures are taken to ensure that the midstream *Miranda* warnings are genuinely understood. *Reyes v. Lewis*, 833 F.3d 1001, 1029 (9th Cir. 2015). Curative measures may include "a substantial break in

5

time and circumstances between the pre-warning statement and the *Miranda* warning," or "an additional warning that explains the likely inadmissibility of the pre-warning custodial statement." *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring).

The record shows that detectives deliberately engaged in a two-step interrogation. Detectives interrogated Young at the police station for at least twenty minutes without providing any *Miranda* warnings. Only *after* Young confessed that he drove the vehicle linked to the shooting (his mother's car) did the detectives finally give him *Miranda* warnings. Although the pre-warning part of the interview was not recorded, Young's post-warning statements appear to be largely repetitive of his pre-warning statements. For example, in response to a question about who was in the car with him, Young said, "I already told you that . . . ." This suggests that the detectives were asking substantive questions about the investigation before the recording device was turned on and before they gave the *Miranda* warnings.

Moreover, the detectives did not take any curative measures. They gave Young only a short break between the pre- and post-warning interrogations. There is no evidence that the detectives told Young that his prior statements would likely be inadmissible. The post-warning interrogation occurred in the same location as

6

the pre-warning interrogation, and the same detectives carried out both interrogations.

We reject the government's contention that the detectives delayed giving the *Miranda* warnings so that they could build rapport with Young and get "biographical" information. The police arrested Young during his truck route and transported him to the police station to be questioned about the murder. By that time, Detective Calzadillas knew that (1) the car at the scene matched Young's mother's car; (2) Young's mother said that only she and her son drove the car and that he was driving it on the morning of the shooting; and (3) at least one witness (Tresevant) had identified Young as being involved. The detectives had no excuse to delay giving the *Miranda* warnings when they interviewed Young, one of the few suspects they had at that point in the investigation. *Cf. Reyes*, 833 F.3d at 1031.

3. Young argues that the district court misinstructed the jury on the elements of RICO, 18 U.S.C. § 1962(d), and VICAR, 18 U.S.C. § 1959(a)(1), (5). Here, Young objected to the RICO jury instruction but did not specify the grounds for his objection, and Young did not object to the VICAR instruction. We therefore review his claim for plain error. *Palmer v. Hoffman*, 318 U.S. 109, 119 (1943).

Young argues that the RICO instruction did not accurately state the culpability required for a criminal conviction under RICO. We agree. The district court instructed the jury that the government must prove that Young "conspired and agreed" that he "or a co-conspirator, would conduct or participate, either directly or indirectly, the conduct of the affairs of the enterprise through a pattern of racketeering activity." The district court's instructions obscure the elements of the crime because they do not explain what the defendant, not a co-conspirator, needed to agree to do in order to be found criminally culpable as a conspirator. A defendant is guilty of conspiracy to violate RICO only if the evidence shows that the defendant knowingly and personally "agreed to facilitate a scheme which includes the operation or management of a RICO enterprise." *See United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (internal quotation marks omitted). Because the jury instructions are contrary to *Fernandez*, they are plainly erroneous.

We disagree, however, with Young's argument that the district court erred in instructing the jury on the motive element under VICAR. The VICAR offense requires a murder to have been committed "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity . . . ." 18 U.S.C. § 1959. Implementing our decision in *United States v.*

8

*Banks*, 514 F.3d 959, 969 (2008), the district court instructed the jury that the government must prove that enhancing Young's status in the enterprise was a "substantial purpose" for the murders. Young argues that *Burrage v. United States*, 134 S. Ct. 881 (2014), a case decided after Young's trial, overrules *Banks* and should have required the government to prove that Young's motive to enhance his status was a "but for" cause of the murders. Without deciding the scope of *Burrage* or its applicability to the motive element in VICAR, we conclude that the district court's instruction was not plainly erroneous because *Burrage*'s interpretation of the causation element in the Controlled Substances Act is not obviously applicable in the VICAR context.

4.    Collectively, the Confrontation Clause, *Miranda* violations, and the erroneous jury instructions were not harmless. Without the Tresevant hearsay statement and Young's statement that he was driving his mother's car near the carwash at the time of the shooting, the government's case was weak. Young's mother's statement that her son had the car on the morning of the murder does not preclude the possibility that Young lent the car to another person and does not definitively place Young at the scene of the crime. Additionally, Anthony Gabourel admitted to being in the murder vehicle and named his companions (including Tresevant), none of whom was Young.

Nor is the error in the RICO jury instruction harmless because, at trial, Young heavily contested the government's assertion that Young had personally agreed to facilitate a racketeering scheme. Young's counsel pointed to a complete absence of evidence that Young had any connection with the Pueblo Bishop Bloods's actual gang activity, and recordings captured Young saying that he had "learned a lesson" and had "stopped hanging out" with the gang. Because we cannot "conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error," *Neder v. United States*, 527 U.S. 1, 17 (1999), the erroneous RICO instruction was not harmless.

Absent the erroneously admitted evidence, the jury would have had no evidence that contravened Gabourel's account. Because we cannot be certain "beyond a reasonable doubt that the error[s] complained of did not contribute to the verdict obtained," *Chapman*, 386 U.S. at 24, we vacate Young's convictions and remand for a new trial.

**VACATED AND REMANDED.**