NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 16 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10090 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-08075-DWL-1 |
| v. | |
| JAMES LEE JONES, Jr., | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted October 19, 2021
San Francisco, California

Before: WATFORD and HURWITZ, Circuit Judges, and BAKER,[**] International Trade Judge.
Partial Concurrence and Partial Dissent by Judge BAKER

James Jones, Jr., appeals his convictions for aggravated sexual abuse of a child

and abusive sexual contact with a child. We affirm.

**1.** Jones contends the district court misapplied Federal Rule of Evidence

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

412(a) in granting the government's motion *in limine* to exclude a proposed line of cross-examination regarding sexually-explicit text messages found on a mobile phone belonging to T.H., one of the individuals he was convicted of abusing. We review a district court's evidentiary rulings for an abuse of discretion, but we review *de novo* the district court's interpretation of the Federal Rules of Evidence and whether evidentiary rulings violated a defendant's constitutional rights. *United States v. Haines*, 918 F.3d 694, 697 (9th Cir. 2019).

The only issue is whether the district court denied Jones his Sixth Amendment right to effective cross-examination of the government's witnesses by limiting inquiry into the circumstances of T.H.'s disclosure of Jones's alleged abuse to Eve, her adult older sister and de facto guardian. We conclude it did not.

We find nothing in the court's ruling that would have prohibited defense counsel from establishing that the conversation between T.H. and Eve that prompted T.H.'s disclosure involved conduct for which T.H. could potentially have been disciplined, so long as counsel avoided bringing up the sexual nature of that conduct. Yet counsel did not attempt to do so. Jones contends the ruling *in limine* implied that any questioning at all would violate the court's order, but nothing in the record suggests that a narrower line of questioning would have been precluded. We therefore conclude that the district court's order did not necessarily prohibit Jones from cross-examining T.H. and Eve about the potentially adversarial circumstances surrounding

T.H.'s disclosure.

**2.** Jones contends the district court erred in admitting testimony from government expert Dr. Wendy Dutton about behavioral characteristics of child sex abuse victims. We review the admission of expert testimony at trial for an abuse of discretion, *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014) (en banc), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc), and will uphold the district court's ruling unless it is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record," *United States v. Gadson*, 763 F.3d 1189, 1199 (9th Cir. 2014) (citation omitted).

Jones argues the district court improperly relied on *United States v. Bighead*, 128 F.3d 1329 (9th Cir. 1997), because it predates *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), which clarified that *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) applies not only to "scientific" testimony but also to expert testimony based on "technical" or "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 141. Jones's argument fails. "[T]o the extent *Bighead* affirms a district court's flexibility to consider which *Daubert* factors apply to a particular expert, not consider the factors that are irrelevant, and consider other factors that are relevant to determining the reliability of the expert's testimony, it is consistent with current Supreme Court precedent." *United States v. Halamek*, 5 F.4th 1081, 1088

3

(9th Cir. 2021).

Here, the district court concluded that *Bighead* supported the testimony's introduction, explained that "expert testimony of this sort is routinely admitted in cases involving cases of child sex abuse, and its admission is routinely affirmed by the Ninth Circuit," and found that "Dutton's proposed testimony is both relevant and reliable, and that she's qualified to opine on the topics that are addressed in the notice of expert testimony." While terse, those are the findings *Daubert* and *Kumho Tire* required. *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1190 (9th Cir. 2019) (per curiam). There is no basis to find an abuse of discretion.[1]

**3.** Jones contends the district court erred in refusing to give the parties' stipulated "dual role" jury instruction for the sexual assault nurse examiner (SANE nurse), a witness called by the government. The record shows that Jones's counsel did not object to the district court's decision not to give the instruction, so we review for plain error.[2] *See United States v. Sanders*, 421 F.3d 1044, 1050 (9th Cir. 2005).

---

[1] Jones objects to the government's reliance on non-precedential decisions affirming admission of Dutton's testimony. Circuit Rule 36-3(b) allows citation of such dispositions insofar as they have power to persuade. If the district court was persuaded by those dispositions, that was within its discretion.

[2] Jones contends the abuse of discretion standard applies to "a district court's refusal to give a requested jury instruction due to insufficient evidence to support the instruction." *See United States v. Ocampo-Estrada*, 873 F.3d 661, 665 (9th Cir. 2017). But failure to object to the district court's refusal to give a requested instruction "precludes appellate review," Fed. R. Crim. P. 30(d), except to the extent there is

4

An error is "plain" when it is "clear and obvious." *Id.*

Jones argues that a district court commits plain error by not giving a dual role instruction for a witness who gives both fact and opinion testimony, and he argues that the SANE nurse's testimony about why she did not perform a physical examination of T.H. constituted expert testimony.

Jones identifies no authority from this Court where a medical professional's testimony about a treatment decision is found to require a dual role instruction. In the two cases he cites—*United States v. Vera*, 770 F.3d 1232 (9th Cir. 2014), and *United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015)—the Court emphasized that the instruction was warranted because the witnesses were law enforcement officers. Therefore, even assuming that the SANE nurse's testimony was expert testimony, in the absence of controlling authority from this Court in the treating medical professional context, there is no basis for us to find that the district court committed a "clear and obvious" "plain error." *Cf. United States v. Lane*, 857 F. App'x 372, 373–74 (9th Cir. 2021) (for plain error purposes, *Vera* and *Torralba-Mendia* "offer no guidance regarding whether a court must offer a 'dual role' instruction" in the context of expert testimony from treating nurse practitioners).

**4.** Finally, Jones contends the cumulative effect of the district court's errors

---

"[a] plain error that affects substantial rights," Fed. R. Crim. P. 52(b). Thus, "in the absence of a timely objection to the jury instructions, we review for plain error." *United States v. Kilbride*, 584 F.3d 1240, 1247 (9th Cir. 2009) (cleaned up).

deprived him of a fair trial. Because we affirm the district court's decisions on the other issues, there is no basis to reverse on this theory.

**AFFIRMED.**



FILED

DEC 16 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BAKER, Judge, concurring in part and dissenting in part.

Eve, an adult woman, was the de facto guardian of her 13-year-old sister, T.H., as their mother was deceased. A strict disciplinarian who apparently administered corporal punishment, Eve discovered text messages with sexual content to and from T.H's boyfriend on T.H.'s phone. When Eve confronted T.H. over that discovery, T.H. accused a 51-year-old relative, James Lee Jones, Jr., of molesting her. T.H. may have known at the time from other family members that Eve herself had previously accused Jones of similar conduct.

Eve then called a family meeting, where she made T.H. tearfully repeat the allegations against Jones. Family members later testified at trial that T.H. was visibly upset in recounting her claims, thus bolstering T.H.'s credibility. The jury, however, didn't hear the backstory—that T.H. had another reason to be upset, and that her accusations to Eve, and the ensuing family meeting where T.H. recounted her accusations, all stemmed from a presumably charged confrontation between the two over Eve's discovery of text messages with sexual content on T.H.'s phone.[1]

The jury didn't hear this backstory because the government successfully moved *in limine* to preclude admission of evidence of the text messages under

---

[1] On this record, it is unclear whether Eve and T.H. also disclosed the backstory at the family meeting. This would have been another subject for defense counsel to probe on cross-examination.

Federal Rule of Evidence 412.[2] The district court reasoned that "it just doesn't seem logical to me that if you had a 13-year-old whose sexual behavior was discovered by her older sister, the natural reaction that might provide a bias or motive type theory would be that she would immediately accuse the defendant of having sexually abused her two years earlier."

Rule 412, however, contains an exception for "evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C). Of relevance here, the Confrontation Clause of the Sixth Amendment "guarantees a defendant in criminal proceedings the right 'to be confronted with the witnesses against him.' " *Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009) (quoting U.S. Const. amend. VI). "[T]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' " *Id*. (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974); emphasis in *Holley*). Accordingly, the Sixth Amendment protects a defendant's right to "engag[e] in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately

---

[2] In a civil or criminal proceeding such as this involving "sexual misconduct," Federal Rule of Evidence 412 precludes admission of "(1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a). Jones does not challenge the district court's conclusion that Rule 412 applies to evidence of text messages with sexual content on T.H.'s phone, and I therefore assume it does.

draw inferences relating to the reliability of the witness.' " *Id*. (omission in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).

To be sure, "the right to cross-examination 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *Id*. (quoting *Michigan v. Lucas*, 500 U.S. 145, 149 (1991)). A trial court " 'retain[s] wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.' " *Id.* at 1098–99 (quoting *Van Arsdall*, 475 U.S. at 679). Nevertheless, "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 1099 (cleaned up) (quoting *Lucas*, 500 U.S. at 151).

In view of these principles, this Court applies a two-part test to determine "whether the trial court's preclusion of the cross-examination was an objectively unreasonable application of *Lucas*." *Ortiz v. Yates*, 704 F.3d 1026, 1035 (9th Cir. 2012) (cleaned up). "First, we ask whether the proffered cross-examination sufficiently bore upon the witness'[s] reliability or credibility such that a jury might reasonably have questioned it." *Id.* (cleaned up). "If so, we consider whether the trial court's preclusion of this cross examination was unreasonable, arbitrary[,] or dispro-

portionate in light of any countervailing interests justifying preclusion, such as waste of time, confusion[,] and prejudice." *Id.* (cleaned up).

As to the first part of this Court's test, the proffered cross-examination of Eve and T.H. regarding their confrontation over the text messages bore directly on a possible motive for T.H.'s accusations: deflecting Eve's ire towards Jones and changing the subject from T.H.'s texting with her boyfriend about sex to something else.[3] Whether by design or otherwise, T.H.'s accusations instantly made Jones—not T.H.'s relationship with her boyfriend—the center of the storm.

As a result, the jury might have reasonably questioned T.H.'s credibility had defense counsel been permitted to cross-examine her and Eve regarding their confrontation. We need not "speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it." *Davis*, 415 U.S. at 317. "But . . . the jurors were entitled to have the benefit of the defense theory before them so that they could make an

---

[3] There's actually a relatively new term for this rhetorical device of changing the subject: "In response to an accusation, the purveyor of 'whataboutism' deflects by arguing that someone else (such as the accuser) has also done something wrong. Whether the accusation holds up is irrelevant, relentless whataboutism is a way to justify and distract, not to make a genuine case." Caroline Mala Corbin, *The Unconstitutionality of Government Propaganda*, 81 Ohio St. L.J. 815, 827 (2020) (cleaned up). Of course, as the district court implicitly recognized in granting the government's motion in limine, whataboutism is a logical fallacy. *See* Robert Spohrer & Roger Dodd, *Spotting 10 Logical Fallacies*, 57 Trial 46, 48 (Feb. 2021) (characterizing "whataboutism" as a "fallacy [that] ignores the question and switches the subject to something else"). Nevertheless, whether T.H. sought to change the subject through use of this logical fallacy was highly probative to Jones's defense.

informed judgment as to the weight to place on [T.H.]'s testimony which provided a crucial link in the proof of [Jones's] act." *Id.* (cleaned up).

My panel colleagues do not dispute that the proffered cross-examination bore directly on T.H.'s credibility. Instead, they essentially conclude that under the second part of this Court's test for Confrontation Clause violations, the precluded cross-examination was not "unreasonable, arbitrary[,] or disproportionate in light of any countervailing interests justifying preclusion, such as waste of time, confusion[,] and prejudice." *Ortiz*, 704 F.3d at 1035. My panel colleagues reason that nothing in the district court's ruling prevented defense counsel from cross-examining Eve and T.H. to establish that when the latter accused Jones, she was in trouble for *something*, so long as the sexual nature of the disciplinary issue was not disclosed.

In the final pretrial conference, however, the district court sustained the government's objection to even such an anemic cross-examination:

> THE COURT: How—just mechanically, how is it going—when you're putting on your direct case, are you going to say—*are you going to get into the fact that this conversation between E.T. and T.H. was predicated based on E.T. looking at T.H.'s phone, but just not get into what she saw on the phone*?
>
> MR. POWELL: *No, because I think that that begs the question of, well, what was on the phone that prompted this conversation.* Our anticipated presentation of the evidence would simply to be establish, as Mr. Cain correctly asserted, that E.T. essentially did act in a mother role once their mother died, she raised T.H. And then to simply ask, was there an occasion where you were having a discussion with her about sex, and leave it—leave it broadly at that. And then allow her to testify about how the disclosure came about.

THE COURT: All right. Thank you.

Yes.

MR. CAIN: And I guess, Your Honor, the defense would object to that, because essentially we're lopping out an important part of the story for the jury. And so it effectively—it deprives the defendant of an important potential defense in this case, to completely neutralize how the initial disclosure was made or what prompted it.

THE COURT: All right. Well, thank you for the argument.

*I am going to stick with my tentative, so I'm going to grant the motion to exclude this.*

(emphasis added).[4] I read this as the district court agreeing with the government that merely establishing that T.H. was in trouble was categorically off-limits, because it begged the question of what she was in trouble for.

But even accepting my panel colleagues' reading of the record, for Jones's purpose of challenging T.H.'s credibility, it was highly probative for the jury to learn *why* she was in trouble. That Eve, the strict disciplinarian, confronted T.H. over text messages with sexual content between T.H. and her boyfriend was a critical contextual fact—it would have allowed the jury to understand, in evaluating T.H.'s credibility, just how much hot water she was in when she first accused Jones. And in particular, the cross-examination could have explored whether Eve was probing into

---

[4] At trial, the district court twice affirmed this ruling in sidebars after defense counsel again sought to explore "other reasons" why T.H. might have been upset in the family meeting.

6

the details of T.H.'s relationship with her boyfriend when T.H. suddenly accused Jones of molestation.

Of course, establishing through cross-examination that T.H. was in trouble for texting with her boyfriend about sex would have embarrassed T.H. and invaded her privacy, one of the interests protected by Rule 412. But a witness's potential embarrassment does not trump the Confrontation Clause, as "temporary embarrassment [that] might result to" a key witness "is outweighed by [a criminal defendant's] right to probe into the influence of possible bias" in that witness. *Davis*, 415 U.S. at 320; *see also Holley*, 568 F.3d at 1099–1100 (characterizing *Fowler v. Sacramento Cnty. Sheriff's Dep't*, 421 F.3d 1027 (9th Cir. 2005), as standing for the proposition that "embarrassment cannot serve as the basis to preclude relevant cross-examination when the evidence is highly probative") (cleaned up).

Given Jones's right to cross-examine T.H. over highly probative evidence concerning her motive, a proportional application of Rule 412's countervailing interest in protecting her privacy required sparing T.H. from *unnecessary* embarrassment—not *any* embarrassment. As Jones argues, the district court could have accommodated Rule 412's privacy interests by precluding defense counsel's cross-examination from delving into the specific contents of the texts—for Jones's purposes, it sufficed for the jury to learn that Eve confronted T.H. over text messaging between the latter and her boyfriend about sex, with further inquiry into the

7

messages' prurient details both unnecessary and irrelevant. Accordingly, even as read by my panel colleagues, the district court's preclusion of any testimony regarding the *existence* of the text messages was unconstitutionally disproportionate because "there can be no doubt that the precluded cross-examination sufficiently bore on [T.H.'s] reliability or credibility such that a jury might reasonably have questioned it." *Fowler*, 421 F.3d at 1039.

The government argues that even if the district court's preclusion order violated the Sixth Amendment, it nonetheless was harmless error. To establish harmless error, the government must establish that the Confrontation Clause violation was "harmless beyond a reasonable doubt." *United States v. Bustamante*, 687 F.3d 1190, 1195 (9th Cir. 2012).

To determine whether such a violation was harmless, this Court considers "a variety of factors," including

> the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id*. (quoting *United States v. Orozco-Acosta,* 607 F.3d 1156, 1161–62 (9th Cir. 2010)).

T.H.'s testimony against Jones was essential to the government's case involving her, which otherwise had little to work with. "Precluding cross-examination of a

8

'central, indeed crucial' witness to the prosecution's case is not harmless error." *Holley*, 568 F.3d at 1100 (quoting *Olden v. Kentucky*, 488 U.S. 277, 232–33 (1988) (per curiam)). And while the scope of cross-examination was otherwise unrestricted, "[w]ithout the crucible of cross-examination" of the circumstances of T.H.'s disclosure, Jones "had no way to test the reliability of a significant part of the government's case." *Bustamante*, 687 F.3d at 1195. In my view, the Confrontation Clause error here was surely not harmless as to Jones's convictions on Counts 1–3 relating to T.H.

Eve's testimony against Jones was similarly crucial to the government's case involving her accusations, but, as the government observes, "any limitation in [defense counsel's] questioning of Eve applied only to the circumstances of T.H.'s disclosure and has no bearing on the testimony related to Eve's own abuse." Nothing in the precluded testimony regarding the circumstances of T.H.'s disclosure could have reasonably affected the jury's assessment of Eve's credibility as to her own accusations, which came two months later. As the district court placed no limits on defense counsel's cross-examination of Eve regarding her own accusations, the government has carried its burden of establishing beyond a reasonable doubt that the precluded testimony was harmless error as to Jones's convictions under Counts 4–9.

\* \* \*

9

With his convictions that we affirm today, Jones has four life sentences ahead of him. But as to two of those life sentences for his convictions under Counts 1–3 for molesting T.H., the Constitution requires that Jones at least be permitted to cross-examine his accusers about the specific circumstances of their confrontation which gave rise to T.H.'s accusations against him. I therefore respectfully dissent as to the affirmance of Jones's convictions under Counts 1–3 for the reasons provided above, while joining Parts 2, 3, and 4 of Court's memorandum disposition as to Jones's convictions under Counts 4–9 for molesting Eve.